IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PAUL ALPHA GRANT,<br><br>Plaintiff,<br><br>v.<br><br>GREYSTAR REAL ESTATE PARTNERS, LLC; KAPILINA BEACH HOMES; and CONSERVICE, LLC,<br><br>Defendants. | CIV. NO. 25-00300 JMS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, ECF NO. 22, WITH LEAVE TO AMEND |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, ECF NO. 22, WITH LEAVE TO AMEND**

**I. INTRODUCTION**

This case involves an alleged utility-overbilling scheme orchestrated by Defendants Greystar Real Estate Partners, LLC ("Greystar"), Kapilina Beach Homes ("Kapilina"), and Conservice, LLC ("Conservice"). *See* ECF No. 1. Pro se Plaintiff Paul Alpha Grant ("Plaintiff") claims to have been a victim of the scheme and asserts claims under three federal statutes—the Racketeering Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), and the Fair Credit Reporting Act ("FCRA")—as well as state-law claims for "retaliation" and "spoliation." *See id.* at PageID.3–6.

Defendant Greystar filed a Motion to Dismiss, ECF No. 22 ("Motion"), requesting dismissal of all claims, and Defendant Conservice joined the Motion. ECF No. 47.[1] For the reasons that follow, the Motion is GRANTED as to all claims, with LEAVE TO AMEND as to Plaintiff's RICO, retaliation, and spoliation claims.[2]

## II.  BACKGROUND

### A.  Factual Background

This factual background is drawn from the allegations contained in the Complaint, ECF No. 1, which are taken as true at this motion-to-dismiss stage. *See, e.g.*, *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Plaintiff is a resident of Kapilina Beach Homes, a residential community in Ewa Beach, Hawaii, managed by Defendant Greystar. ECF No. 1 at PageID.4. In October 2024, Defendant Conservice—which performs "third-party utility billing and submetering" for Kapilina Beach Homes—sent Plaintiff a utility

---

[1] This Order refers to Defendants Greystar and Conservice collectively as "Defendants."

[2] The Complaint describes Defendant Kapilina as "a Delaware entity managed by" Defendant Greystar, ECF No. 1 at PageID.4, and Defendant Greystar asserts that Defendant Kapilina does not exist as a "separate entity." ECF No. 22-1 at PageID.428 n.1. Regardless, although Defendant Kapilina has not joined the Motion to Dismiss, all claims against Defendant Kapilina are also DISMISSED, with LEAVE TO AMEND as to the RICO, retaliation, and spoliation claims. *See Silverton v. U.S. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). If Plaintiff files an amended complaint, he should consider whether Kapilina is an appropriate or necessary defendant.

bill "reflecting grossly inflated usage and charges." *Id.* In response, Plaintiff undertook "a forensic investigation into utility billing practices at Kapilina Beach Homes," which involved "collecting photographic evidence of electric, gas, and water meters" for "more than 90 tenant units." *Id.* at PageID.4–5.

While Plaintiff's investigation was ongoing, Defendant Greystar "began selectively monitoring meters," and "within 30 minutes" of Plaintiff collecting data from one tenant's gas meter, "Greystar staff arrived for the first time ever" to take its own reading. *Id.* at PageID.5. Two tenants "were offered zero utility bills and rent reductions" shortly after Plaintiff collected data from their meters, and another tenant "received a refund for years of alleged overcharges." *Id.* In addition, all utility records from one tenant's Conservice account were "purged," and Plaintiff's list of potential witnesses was "compromised and downloaded by an unauthorized party." *Id.*

Plaintiff's investigation revealed "that numerous tenants—including himself—were being billed for utility usage that did not occur, indicating a pattern of fraudulent billing," and "[w]hen confronted with these discrepancies, neither Greystar nor Conservice provided a meaningful response." *Id.* at PageID.4. After the investigation, Defendant Conservice "altered billing patterns, refunded charges, or zeroed out bills without explanation." *Id.* at PageID.5. Finally, "[s]hortly after the evidence began mounting and was filed in conjunction with public records

3

documenting complaints from other tenants," Plaintiff was served an eviction notice despite having "never been late on rent." *Id.* at PageID.4–5.

**B.     Procedural Background**

On September 26, 2025, Defendant Greystar filed a Motion to Dismiss, arguing that none of Plaintiff's claims is stated with sufficient factual plausibility to satisfy Federal Rule of Civil Procedure 8(a)(2).  ECF No. 22.  On October 29, 2025, Plaintiff requested an extension of the deadline to file his Opposition to the Motion, explaining that he needed more time to "authenticate, analyze, and integrate" documents released "for the first time" on October 28, 2025.  ECF No. 32. The court granted Plaintiff's request, but given his explanation, the court reminded Plaintiff of the limited scope of review on a motion to dismiss.  ECF No. 34.  Plaintiff made a second, similar request on November 6, 2025, ECF No. 35, which the court granted with the same reminder.  ECF No. 36.  On November 13, after the court denied a third requested extension, ECF No. 42, Plaintiff filed his Opposition.  ECF No. 43.  Defendant Conservice joined the Motion on November 18, 2025, ECF No. 47,[3] and on November 28, 2025, Defendant Greystar filed a Reply.  ECF No. 52.  The court decides the Motion without oral argument pursuant to Local Rule 7.1(c).

---

[3] Although styled as a "Joinder," ECF No. 47 appears on the docket as a pending "Motion for Joinder," and is GRANTED.  *See* LR7.7 (permitting joinder in motions).

### III. **STANDARDS OF REVIEW**

A complaint must contain "a short and plain statement" of each claim "showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To determine whether that requirement is satisfied, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "may not simply recite the elements of a cause of action," and instead "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Iqbal*, 556 U.S. at 678 (noting that Rule 8 does not require detailed factual allegations, but "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation[s]"). When ruling on a motion to dismiss, the court considers only the complaint, attached exhibits, and documents incorporated by reference. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).[4]

---

[4] Plaintiff's Opposition claims that since the Complaint was filed, "extensive corroborating data" has been uncovered and made part of the record, ECF No. 43 at PageID.537, apparently through the 1,057 pages of exhibits attached to the Opposition. *See* ECF Nos. 43-1 through 43-51. At this motion-to-dismiss stage, however, the court may not consider new facts alleged in the Opposition or exhibits attached to it. *See, e.g.*, *Andrews v. Hawaii County*, 2013

(continued . . . )

Pro se filings must be liberally construed, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), but "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and should be denied only where "the pleading could not possibly be cured by the allegation of other facts." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 960 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)). In other words, leave to amend may be denied when amendment would be futile. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014).

### IV.  DISCUSSION

**A.  The Complaint Fails to State a RICO Claim.**

To state a federal RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise [that effects interstate commerce] (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joinders of Am. v. Bldg. &*

---

WL 5274369, at *6 (D. Haw. Sept. 17, 2013).  The court therefore considers only the parts of the Opposition that are responsive to the Motion and do not allege new facts.

The court also reminds Plaintiff that under Local Rule 7.4, a brief in opposition to a motion may not exceed 25 pages or 6,250 words.  Plaintiff's Opposition far exceeds these limits, running to 129 pages and more than 27,000 words.  *See* ECF No. 43.  Going forward, Plaintiff's filings must comply with the Local Rules, or they may be stricken.

*Constr. Trades Dept., AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014); *see also* 18 U.S.C. § 1962(c); *Eclectic Props. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Defendants argue that the Complaint fails to allege (1) the existence of an enterprise and (2) predicate acts constituting a pattern of racketeering activity. ECF No. 22-1 at PageID.438–440. The court agrees.

### 1.     *The Complaint Fails to Allege the Existence of an Enterprise.*

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). An enterprise may also consist of a "union or group of individuals associated in fact though not a legal entity," *id.*, also known as an "association-in-fact enterprise." *See, e.g.*, *Boyle v. United States*, 556 U.S. 938, 945 (2009). An association-in-fact enterprise must have (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose, *Eclectic Props.*, 751 F.3d at 997, but "need not have a hierarchical structure" or "fixed roles." *Boyle*, 556 U.S. at 948.

The Complaint neither alleges that Defendants were part of a "partnership, corporation, association, or other legal entity," 18 U.S.C. § 1961(4), nor alleges sufficient facts to show an association-in-fact enterprise. Liberally construed, the Complaint alleges that Defendants shared a common purpose of obtaining money from tenants through "systemic utility overbilling fraud," ECF

No. 1 at PageID.3, but the Complaint lacks allegations relating to the "structure or organization" of the enterprise or its "longevity." The Complaint merely alleges conduct by each Defendant, *see, e.g.*, *id.* at PageID.5 (alleging that "Greystar began selectively monitoring meters" and "Conservice altered billing patterns, refunded charges, or zeroed out bills without explanation"), then makes the conclusory assertion that "Defendants' conduct is in violation of [RICO]." Without plausible factual allegations showing that Defendants formed a "group" that "function[ed] as a continuing unit" and "remain[ed] in existence long enough to pursue a course of conduct," *Boyle*, 556 U.S. at 948, the Complaint fails to plead the existence of an enterprise.

### 2.    *The Complaint Fails to Allege a Pattern of Racketeering Activity.*

A RICO plaintiff must also allege a "pattern" of "racketeering activity." *United Bhd. of Carpenters & Joinders*, 770 F.3d at 837. "Racketeering activity" is defined as "any act or threat involving" a variety of enumerated state and federal crimes, 18 U.S.C. § 1961(1), also known as "predicate acts." *See, e.g.*, *United States v. Busher*, 817 F.2d 1409, 1412 (9th Cir. 1987). To show a "pattern," the plaintiff must allege facts showing that the predicate acts "are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis omitted). A plaintiff asserting RICO claims against multiple defendants "must allege at least

8

two predicate acts by *each* defendant." *In re WellPoint Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (emphasis in original).

The Complaint makes a conclusory assertion that Defendants' "actions" and "conduct" are "consistent with racketeering activity," ECF No. 1 at PageID.5, but does not specify which "actions" or what "conduct" satisfies the statutory definition of racketeering activity. *See, e.g.*, *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 2008 WL 11346211, at *3 (N.D. Cal. Aug. 13, 2008) ("A plaintiff bringing a claim under RICO must establish that the defendant committed some unlawful 'predicate act.'"). The Complaint therefore fails to allege at least two predicate acts by each Defendant. And because the Complaint fails to specify which of Defendants' actions constitute predicate acts, it necessarily fails to establish a "pattern" by showing a relationship between predicate acts and a "threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

Plaintiff's RICO claim is DISMISSED. But because the court cannot say at this stage that amendment would be futile, Plaintiff is granted leave to amend the claim.[5]

---

[5] Defendants also argue, without elaboration, that the Complaint "fails to allege an effect on interstate commerce." ECF No. 22-1 at PageID.440. A nexus to interstate commerce is "an essential element of a RICO violation, but the required nexus need not be great." *United States v. Bagnariol*, 665 F.2d 877, 892 (9th Cir. 1981). "[A]ll that is required . . . is a showing that the individual predicate racketeering acts have a de minimis impact on interstate commerce." *United States v. Juvenile Male*, 118 F.3d 1344, 1347 (1997). Here, the alleged scheme involved the

(continued . . . )

### B.     The Complaint Fails to State a Spoliation Claim.

Hawaii courts have not recognized a tort claim for spoliation. *See Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 168, 73 P.3d 687, 706 (2003) ("[T]his court need not resolve whether Hawaiʻi law would recognize a tort of spoliation of evidence."); *Jou v. Adalian*, 2016 WL 4582042, at *19 (D. Haw. Sept. 1, 2016) (discussing *Matsuura* and the absence of any subsequent Hawaii cases recognizing a spoliation claim). Assuming a spoliation claim does exist under Hawaii law, it would require a showing that the defendant's destruction of evidence significantly impaired the plaintiff's ability to prove the underlying claims. *See Matsuura*, 102 Haw. at 166–67, 73 P.3d at 704–05.

The Complaint contains two allegations involving possible destruction of evidence: (1) "one tenant reported that all utility records from her Conservice account had been purged and labeled 'gone forever;'" and (2) Defendant Greystar "attempted to retract an incriminating email." ECF No. 1 at PageID.5. Given the scope of Plaintiff's investigation—which allegedly spanned five months and yielded 17,000 pieces of "digital evidence" from "more than 90 tenant units," *id*. at PageID.1–6—the Complaint fails to show how these two isolated actions impaired

---

delivery of inflated utility bills by Conservice, based in Utah, to residents of Hawaii. ECF No. 1 at PageID.4. The utility bills directed payment to a Hawaii address associated with "Kapilina Beach Homes," ECF No. 1-1 at PageID.9, which Plaintiff alleges is a "Delaware entity managed by" Defendant Greystar, a "foreign real estate management company." ECF No. 1 at PageID.4. Given these allegations, Plaintiff has sufficiently pled an effect on interstate commerce.

Plaintiff's ability to prove his other claims. Plaintiff's spoliation claim is DISMISSED. But because the court cannot say at this stage that amendment would be futile, Plaintiff is granted leave to amend the claim.

**C.     The Complaint Fails to State a Retaliatory Eviction Claim.**

Plaintiff asserts a cause of action for "retaliation." ECF No. 1 at PageID.6. Liberally construing the Complaint, the court assumes Plaintiff is attempting to assert a claim for retaliatory eviction under Hawaii Revised Statutes ("HRS") § 521-74. *See id.* at PageID.2 (seeking damages for "retaliatory eviction"); *see also, e.g.*, ECF No. 43 at PageID.576 (referring to "retaliatory eviction" and citing HRS § 521-74).[6]

Section 521-74 prohibits eviction after (1) a tenant "has complained in good faith" to a government agency, (2) a government agency "has filed a notice or complaint of a violation," or (3) a tenant "has in good faith requested repairs." HRS § 521-74(a)(1)–(3). Section 521-74 applies only where the tenant has continued to pay rent or has lawfully withheld rent. *Id.* § 521-74(a).

Plaintiff alleges that he "has never been late on rent," which satisfies the threshold requirement of a retaliatory eviction claim under § 521-74. Plaintiff

---

[6] Under Hawaii law, retaliatory eviction may be asserted as an affirmative defense to an eviction action or as a counterclaim. *See Ryan v. Herzog*, 142 Haw. 278, 286–87, 418 P.3d 619, 627–28 (2018). It is unclear whether this claim should have been brought, if at all, in the underlying eviction action. For purposes of this Order, however, the court assumes that Plaintiff may bring a retaliatory eviction claim here, outside the context of an eviction proceeding.

11

further alleges that he was served an eviction notice "shortly after the evidence began mounting and was filed." ECF No. 1 at PageID.5. But the precise meaning of this allegation is unclear; Plaintiff does not allege that the "evidence . . . was filed" *as part of a complaint to a government agency*. Without more, this ambiguous allegation is insufficient to state a claim under § 521-74.[7] Plaintiff's retaliation claim is DISMISSED. But because the court cannot say at this stage that amendment would be futile, Plaintiff is granted leave to amend the claim.

### D.     The Complaint Fails to State an FCRA Claim.

The FCRA applies only to "consumer reporting agencies." *See Alexander v. Moore & Assocs., Inc.*, 553 F. Supp. 948, 949–50 (D. Haw. 1982) ("The threshold question is whether the [FCRA] has any application in the instant case, since the requirements of the [FCRA] apply only to 'consumer reporting agencies.'"). The Complaint does not claim that any Defendant is a consumer reporting agency; it describes Defendant Greystar as a "real estate management company" and Defendant Conservice as a company "engaged in the business of third-party utility billing and submetering for residential properties." ECF No. 1 at PageID.4. Plaintiff's FCRA claim is DISMISSED. And given the Complaint's descriptions of Defendants, the court concludes that amendment would be futile.

---

[7] The Complaint does not allege that Plaintiff had requested repairs, or that a government agency had filed a notice or complaint of a violation by Defendants. *See* HRS § 521-74(a)(2)–(3).

*See Carolina Cas. Ins. Co.*, 741 F.3d at 1086 (stating that leave to amend may be denied when amendment would be futile).

**E.     The Complaint Fails to State an FDCPA Claim.**

The FDCPA provides a right of action for certain prohibited conduct by a "debt collector," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The FDCPA applies only to the collection of debts in default.  *See id.* § 1962a(6)(F)(iii) (excluding from the definition of "debt collector" any person whose activity "concerns a debt which was not in default at the time it was obtained by such person").

The Complaint fails to allege that any Defendant is a "debt collector." Nothing in the Complaint suggests that Defendant Greystar's "principal purpose is . . . the collection of any debts," or that it "regularly collects or attempts to collect" debts owed to another.  15 U.S.C. § 1692a(6).  And although the Complaint's description of Defendant Conservice suggests that its business involves the collection of payments owed by tenants to utility companies, that activity falls outside the scope of the FDCPA.  *See Mitchell v. Kaiser Found. Health Plan, Inc.*, 2010 WL 5387712, at *6 (N.D. Cal. Dec. 22, 2010) ("[T]he FDCPA only applies

13

to debt which was in default."). Plaintiff's FDCPA claim is DISMISSED. And given the Complaint's descriptions of Defendants, the court concludes that amendment would be futile.

**F.     The Complaint Fails to Differentiate Between Defendants.**

Defendants also argue that the Complaint fails to "identify which claim is asserted against which Defendant." ECF No. 22-1 at PageID.435. The court agrees.

"Undifferentiated pleading against multiple defendants is improper" because a complaint must provide each defendant "with fair notice of its alleged misconduct." *Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011); *see also Ye Jiang v. Zhong Fang*, 2021 WL 2895681, at *5 (D. Haw. Jul. 9, 2021) ("Where, as here, Plaintiffs assert claims against groups of Defendants without drawing distinctions between their conduct or including requisite facts as to each claim, Plaintiffs violate FRCP 8.").

The Complaint contains some allegations of specific conduct by particular Defendants, *see, e.g.*, ECF No. 1 at PageID.5 (alleging that "Greystar began selectively monitoring meters" and "Conservice altered billing patterns, refunded charges, or zeroed out bills without explanation"), but fails to connect these allegations to particular claims. And other allegations are made against Defendants generally, *see, e.g., id.* at PageID.6 ("Defendants' conduct is in

14

violation of [RICO], and relevant consumer protection statutes."), or against unidentified parties, *see, e.g.*, *id.* at PageID.5 (alleging that "Plaintiff's sealed witness list was compromised and downloaded by an unauthorized party").

Moreover, the Complaint's "Causes of Action" section consists of a single sentence: "To be inserted: Individual counts for RICO violation, consumer fraud, retaliation, and spoliation." *Id.* at PageID.6. This apparent placeholder language fails to provide "each defendant with fair notice of the allegations made against them so that they can defend themselves effectively." *Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024). If Plaintiff files an amended complaint, he must clearly attribute alleged actions to particular Defendants and specify which claims are asserted against which Defendants.

## V. **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss, ECF No. 22, and DISMISSES all claims, WITH LEAVE TO AMEND as to Plaintiff's RICO, spoliation, and retaliation claims. Plaintiff is not granted leave to amend as to his FDPA and FCPRA claims. Plaintiff may file an amended complaint by January 20, 2026. Failure to file an amended complaint by that date will result in automatic dismissal of this action.[8]

---

[8] Plaintiff's Opposition is combined with a "Motion for Preservation of Evidence, Expedited Discovery, and Protective Order Safeguarding the Identity and Testimony of

(continued . . . )

15

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 22, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

---

Cooperating Tenants and Witnesses." ECF No. 43 at PageID.531.  Plaintiff's Motion is DENIED for four reasons.  First, Plaintiff's motion does not raise "the same subject matter" as Defendants' Motion to Dismiss.  *See* LR7.7 ("Any motion raising the same subject matter as an original motion may be filed by the responding party together with the party's opposition . . . .").  Second, Plaintiff's request for expedited discovery is premature because the parties have not yet conferred under Rule 26(f) and discovery has not yet been authorized by the court.  *See* ECF No. 31.  Third, protective orders are generally not available until "discovery is sought."  Fed. R. Civ. P. 26(c)(1).  And fourth, Plaintiff has not clearly explained the need for, or the scope of, the requested order for preservation of evidence.  *See generally*, ECF No. 43.  If Plaintiff files an amended complaint, he may clarify his request in a separate motion at the appropriate time.