IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PAUL ALPHA GRANT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREYSTAR REAL ESTATE PARTNERS, LLC; and CONSERVICE, LLC,<br><br>　　　　Defendants. | CIV. NO. 25-00300 JMS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 55 & 56, WITH LEAVE TO AMEND |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 55 & 56, WITH LEAVE TO AMEND**

**I. INTRODUCTION**

　　This case involves an alleged utility-overbilling scheme orchestrated by Greystar Real Estate Partners, LLC ("Greystar") and Conservice, LLC ("Conservice") (collectively, "Defendants"). *See* ECF No. 54 ("Amended Complaint"). Pro se Plaintiff Paul Alpha Grant ("Plaintiff") alleges that he was a victim of the scheme, and asserts three claims:

1. Count I: A claim against both Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO");

2. Count II: A state-law claim against Greystar for retaliatory eviction under Hawaii Revised Statutes ("HRS") § 521-74; and

3. Count III: A claim against both Defendants based on spoliation of evidence.

Defendants filed separate Motions to Dismiss, ECF Nos. 55 & 56, each requesting dismissal of the claims against them. For the reasons that follow, the Motions are GRANTED as to all claims, with LEAVE TO AMEND as to Plaintiff's RICO and retaliation claims.

## II.  BACKGROUND

### A.  Factual Background

This factual background is drawn from the allegations contained in the Amended Complaint, ECF No. 54, which are taken as true at this stage, *see, e.g.*, *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

The Amended Complaint implies that Greystar owns and manages Kapilina Beach Homes, a residential community in Ewa Beach, Hawaii.  *See* ECF No. 54 at PageID.1932–33 (describing Greystar as "engaged in the ownership, management, and operation of residential rental properties," including in Hawaii). Utility charges for tenants of Kapilina Beach Homes "are not billed directly by public utility providers," but instead "are generated through a third-party utility billing system administered by" Conservice. *Id.* at PageID.1933. Under this system, "utility consumption data associated with individual dwelling units is collected, processed, and converted into monthly charges," which are "transmitted electronically to tenants as part of their monthly account statements." *Id.* at PageID.1934.

Plaintiff was a long-term resident of Kapilina Beach Homes. *Id.* "Throughout his tenancy, Plaintiff received monthly billing statements that included rent and itemized utility charges generated through the Conservice billing system." *Id.* These utility charges "varied month to month" and were based on consumption data specific to Plaintiff's residential unit. *Id.*

Around October 2024, Plaintiff began a "forensic review" of utility billing practices at Kapilina Beach Homes "after observing unexplained and inconsistent utility charges." *Id.* at PageID.1935. This review involved collecting "digital billing records, meter data, and photographic documentation associated with multiple residential units over successive billing periods." *Id.* Ultimately, the review "revealed repeated instances in which utility charges reflected usage materially inconsistent with observable meter readings and historical consumption patterns, indicating that billed usage did not occur as represented." *Id.*

After Plaintiff's analysis revealed these "billing discrepancies," Greystar increased its monitoring of utility meters, altered "billing presentation," and made "selective account adjustments." *Id.* In addition, Defendants "restricted access to billing records" and "issued unexplained refunds, rebills, or zero-balance statements to specific tenants without providing any accounting or correction methodology." *Id.* at PageID.1935–36. Greystar also "initiated adverse tenancy actions" against Plaintiff. *Id.* at PageID.1936. This lawsuit followed.

**B.     Procedural Background**

On December 22, 2025, the court dismissed all claims asserted in Plaintiff's original Complaint with partial leave to amend.  *See* ECF No. 53.  Plaintiff filed an Amended Complaint on December 23, 2025, ECF No. 54, and on January 16, 2026, Defendants each filed a Motion to Dismiss, ECF Nos. 55 & 56 ("Motions").  On January 20, 2026, Plaintiff filed a consolidated Opposition, ECF No. 58, and on February 9, 2026, Defendants each filed a Reply, ECF Nos. 63 & 64.  The court decides the Motions without a hearing pursuant to Local Rule 7.1(c).

### III.  STANDARDS OF REVIEW

A complaint must contain "a short and plain statement" of each claim "showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To determine whether that requirement is satisfied, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and decide whether these allegations state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint "may not simply recite the elements of a cause of action," but instead "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Iqbal*, 556 U.S. at 678 (noting that Rule 8 does not require detailed factual allegations, but "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation").

Claims sounding in fraud are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). To satisfy the heightened standard, the complaint must "state with particularity the circumstances constituting" the fraud. Fed. R. Civ. P. 9(b).

Pro se filings must be liberally construed, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), but "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong," *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and should be denied only where "the pleading could not possibly be cured by the allegation of other facts." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 960 (9th Cir. 2020) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)) (quotation marks omitted). In other words, leave to amend may be denied when amendment would be futile. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014).

### IV.  DISCUSSION

**A.    The Complaint Fails to State a Civil RICO Claim**

To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of*

*Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014); *see also* 18 U.S.C. § 1962(c).

The court dismissed Plaintiff's RICO claim as pled in his original Complaint for failure to plausibly allege (1) the existence of an enterprise and (2) a pattern of racketeering activity. *See* ECF No. 53 at PageID.1919–1922. The instant Motions argue that these deficiencies persist in the Amended Complaint. *See* ECF No. 55-1 at PageID.1962–1969; ECF No. 56-1 at PageID.1988–2004. The court concludes that the Amended Complaint plausibly alleges the existence of an enterprise, but fails to plausibly allege a pattern of racketeering activity.

### *1.     The Complaint Plausibly Alleges the Existence of an Enterprise*

The Amended Complaint alleges that Defendants formed an "association-in-fact" enterprise. *See* ECF No. 54 at PageID.1940 (alleging that Defendants were part of an enterprise that "existed as a continuing association-in-fact"); *see also* 18 U.S.C. § 1961(4) (stating that an enterprise may consist of a "union or group of individuals associated in fact although not a legal entity"). An association-in-fact enterprise must have (1) a common purpose, (2) structure or organization, and (3) longevity necessary to accomplish the purpose. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

The court begins by determining whether the Amended Complaint alleges a common purpose. The "RICO Enterprise" section of the Amended Complaint alleges that the enterprise's purpose was to "administer and collect

6

residential utility charges from tenants at properties managed or controlled by Greystar through the billing infrastructure operated by Conservice." ECF No. 54 at PageID.1937.  These "routine business activities" cannot constitute the purpose of a RICO enterprise.  *See Fraser v. Team Health Holdings, Inc.*, 2022 WL 971579, at *11 (N.D. Cal. Mar. 31, 2022) (stating that allegations that "do no more than establish routine business activities" among alleged participants are "insufficient to plead a RICO claim").  Elsewhere in the Amended Complaint, however, Plaintiff alleges that Defendants "operated and participated in an ongoing scheme to inflate or fabricate tenant utility charges, suppress or alter billing patterns when discrepancies were challenged, and deter tenant resistance through selective refunds, intimidation, and adverse housing actions." ECF No. 54 at PageID.1931.  In short, liberally construing the Amended Complaint as required for a pro se filing, *Eldridge*, 832 F.2d at 1137, it alleges that the enterprise's common purpose was to operate a utility-overbilling scheme, which satisfies the requirement that RICO liability be "predicated on a relationship more substantial than a routine business relationship," *Fraser*, 2022 WL 971579, at *12.

      Read in light of that common purpose, the Amended Complaint's allegations relating to the structure and longevity of the enterprise are also sufficient.  With respect to structure, Plaintiff alleges that Defendants played "defined and complementary roles" in the enterprise, with Greystar exercising

7

"authority over residential properties, tenant accounts, and enforcement actions," and Conservice providing "the billing platform and systems used to calculate, generate, and transmit utility charges." ECF No. 54 at PageID.1937. And with respect to longevity, Plaintiff alleges that the enterprise operated "over multiple billing cycles and years," and that the relationships among the participants were "continuous rather than sporadic and were maintained through recurring billing, account administration, and tenant interactions." *Id.*

In sum, although the allegations in the Amended Complaint are sparse, they are sufficient to allege the plausible existence of an association-in-fact enterprise.

### 2.     *The Complaint Fails to Allege a Pattern of Racketeering Activity*

Where a RICO claim is premised on predicate acts of fraud, the "'circumstances constituting fraud . . . shall be stated with particularity' pursuant to Federal Rule of Civil Procedure 9(b)." *Fraser*, 2022 WL 971579, at *9 (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, the complaint "must identify the who, what, when, where, and how" of the alleged fraud. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)) (internal quotation marks omitted).

The Amended Complaint alleges that Defendants committed "at least two acts of wire fraud," ECF No. 54 at PageID.1940, but fails to state the relevant

circumstances with particularity. For example, the Amended Complaint alleges that the wire fraud consisted of a laundry list of "electronic communications," including "monthly tenant account statements, billing notices, account balances, and enforcement-related communications" transmitted by Greystar to Plaintiff, and "utility billing statements, usage summaries, account records, and billing data" transmitted by Conservice to "tenants and property managers." *Id.* at PageID.1938–1939. In similarly general terms, the Amended Complaint alleges that Greystar sent these fraudulent communications from "at least 2012 through 2025," and that Conservice did so from "at least 2022 through 2025." *Id.*

Plaintiff argues that "Rule 9(b) does not require transaction-by-transaction pleading where fraud is systemic, data-driven, and centrally administered." ECF No. 58 at PageID.2016. It is true that "in cases involving an ongoing conspiracy to commit fraud over multiple transactions over a period of years, Rule 9(b) does not require a complete recitation of every alleged fraudulent transaction." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12778048, at *6 (C.D. Cal. Oct. 23, 2015) (citing *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997)). Nevertheless, the complaint must describe specific examples of allegedly fraudulent transactions in enough detail "to provide notice of the types of fraud at issue" in the broader scheme. *Id.* at *8 (concluding that Rule 9(b) was satisfied where the complaint described "40 examples" of fraudulent

9

transactions with "great specificity" and alleged "that the same fraudulent practices applied to" many other transactions).

Here, the Amended Complaint identifies only one allegedly fraudulent communication with any degree of particularity: an "electronic utility billing statement" transmitted by Conservice to Plaintiff in October 2024, reflecting "substantially inflated utility usage and charges." ECF No. 54 at PageID.1935. Even assuming that this description satisfies Rule 9(b), this example standing alone is not sufficient to illustrate the broader scheme, which allegedly involved a wide variety of fraudulent communications. *See id.* at PageID.1938–1939 (referring to acts of wire fraud involving "monthly tenant account statements," "billing notices," "account balances," "enforcement-related communications," "utility billing statements," "usage summaries," "account records," and "billing data."). Moreover, a plaintiff asserting RICO claims against multiple defendants "must allege at least two predicate acts by *each* defendant." *In re WellPoint Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012).

In sum, the Amended Complaint fails to allege a pattern of racketeering activity with the specificity required by Rule 9(b). *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d at 1388, 1392 (9th Cir. 1988) (stating that a failure to plead the "specifics of time, place, or nature" of predicate acts of fraud is a "fatal defect" under Rule 9(b)). Plaintiff's RICO claim is therefore DISMISSED,

10

but because the court cannot say at this stage that further amendment would be futile, Plaintiff is granted leave to amend his claim.

## B.    The Complaint Fails to State a Retaliation Claim

The original Complaint asserted an undefined cause of action for "retaliation," ECF No. 1 at PageID.6, which the court construed liberally and assumed to be a claim for retaliatory eviction under HRS § 521-74(a).[1]  ECF No. 53 at PageID.1924.  The claim was dismissed for failure to allege that Plaintiff engaged in protected activity covered by the statute.  *See* HRS § 521-74(a)(1)–(3).

---

[1] Section 521-74 provides:

(a) Notwithstanding that the tenant has no written rental agreement or that it has expired, so long as the tenant continues to tender the usual rent to the landlord or proceeds to tender receipts for rent lawfully withheld, no action or proceeding to recover possession of the dwelling unit may be maintained against the tenant, nor shall the landlord otherwise cause the tenant to quit the dwelling unit involuntarily, nor demand an increase in rent from the tenant; nor decrease the services to which the tenant has been entitled, after:

(1) The tenant has complained in good faith to the department of health, landlord, building department, office of consumer protection, or any other governmental agency concerned with landlord-tenant disputes of conditions in or affecting the tenant's dwelling unit which constitutes a violation of a health law or regulation or of any provision of this chapter; or

(2) The department of health or other governmental agency has filed a notice or complaint of a violation of a health law or regulation or any provision of this chapter; or

(3) The tenant has in good faith requested repairs under section 521-63 or 521-64.

Plaintiff does not allege that either subsection (a)(2) or subsection (a)(3) are satisfied here.  *See* ECF No. 54.

11

The Amended Complaint confirms that Plaintiff's retaliation claim is brought under § 521-74, but again fails to allege that he engaged in protected activity. The Amended Complaint alleges only that Plaintiff "question[ed] and document[ed] utility charges associated with his tenancy," ECF No. 54 at PageID.1941, which does not qualify as protected activity under § 521-74(a). In his Opposition, Plaintiff asserts that he "reported the systemic overbilling scheme through public and administrative channels," including in "criminal fraud complaints with the Honolulu Police Department and the Federal Bureau of Investigation." ECF No. 58 at PageID.2017. These allegations, however, do not appear in the Amended Complaint, *see* ECF No. 54, and therefore cannot be considered. *See Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989) (stating that "review of a motion to dismiss is limited to the contents of the complaint"). Moreover, § 521-74(a)(1) applies only to complaints made to certain agencies—namely, "the department of health, landlord, building department, office of consumer protection, or any other government agency concerned with landlord-tenant disputes."

In addition, § 521-74 applies only where the tenant has continued to pay rent or has lawfully withheld rent. HRS § 521-74(a). Although the original Complaint alleged that Plaintiff had "never been late on rent," ECF No. 1 at PageID.4, the Amended Complaint contains no such allegation, *see* ECF No. 54.

12

And finally, although the Amended Complaint alleges that Greystar "had knowledge of Plaintiff's protected activity," ECF No. 54 at PageID.1941, it provides no factual support for that allegation.  *See Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023) ("Conclusory allegations cannot defeat a motion to dismiss."); *see also Cedillos v. Masumoto*, 136 Haw. 430, 443, 363 P.3d 278, 291 (2015) (holding that § 521-74 prohibited eviction where the tenant had remained current on rent, made a good faith complaint, and served it on the landlord).

       For these reasons, Plaintiff's retaliation claim is DISMISSED.  But because the court cannot say at this stage that further amendment would be futile, Plaintiff is granted leave to amend the claim.

**C.**    **The Complaint Does Not Assert a Claim for Spoliation**

       Finally, the Amended Complaint alleges that Defendants "altered, suppressed, or failed to preserve certain billing records and account information, including through changes to portal accessibility and record availability."  ECF No. 54 at PageID.1941.  Plaintiff requests "appropriate remedial relief," *id.* at PageID.1942, but clarifies in his Opposition that he "does not plead spoliation as an independent cause of action," ECF No. 58 at PageID.2017.  Plaintiff's spoliation claim is therefore DISMISSED WITHOUT LEAVE TO AMEND.[2]

---

[2] This ruling does not preclude Plaintiff from renewing his request for spoliation-related relief at a later stage, if appropriate.  *See Groves Inc. v. R.C. Bremer Mktg. Assocs.*, 2024 WL
(continued . . . )

## V. **CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motions to Dismiss, ECF Nos. 55 & 56, and DISMISSES all claims, WITH LEAVE TO AMEND as to Plaintiff's RICO and retaliation claims.  Plaintiff may file a second amended complaint by March 27, 2026.  Failure to file a second amended complaint by that date will result in automatic dismissal of this action.  This will be Plaintiff's final opportunity to amend.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 27, 2026.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

---

4871368, at *4 (N.D. Ill. Nov. 22, 2024) (discussing premature spoliation motions and explaining that generally "a spoliation motion shouldn't be filed before discovery has been served and responded to").