IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PAUL ALPHA GRANT, | CIV. NO. 25-00300 JMS-RT |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 68 & 69 |
| v. | |
| GREYSTAR REAL ESTATE PARTNERS, LLC; and CONSERVICE, LLC, | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 68 & 69**

**I. INTRODUCTION**

This case involves an alleged utility-overbilling scheme orchestrated by Greystar Real Estate Partners, LLC ("Greystar") and Conservice, LLC ("Conservice") (collectively, "Defendants"). Pro se Plaintiff Paul Alpha Grant ("Plaintiff") alleges that he was a victim of the scheme, and his second amended complaint ("SAC") asserts three claims:

1. Count I: A claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO");

2. Count II: A claim of retaliation under a Hawaii landlord-tenant statute; and

3. Count III: A claim of interference under the federal Fair Housing Act ("FHA").

Defendants filed separate Motions to Dismiss, ECF Nos. 68 & 69, each requesting dismissal of all three claims.  For the reasons that follow, the Motions are GRANTED.  Specifically, the court: (1) DISMISSES Plaintiff's RICO claim WITHOUT LEAVE TO AMEND; (2) STRIKES Plaintiff's newly asserted interference claim; and (3) declines to exercise supplemental jurisdiction over Plaintiff's state-law retaliation claim and DISMISSES it WITHOUT PREJUDICE.

## II.  BACKGROUND

### A.    Factual Background[1]

Plaintiff was a tenant of Kapilina Beach Homes, a residential community in Ewa Beach, Hawaii.  ECF No. 67 at PageID.2090.  The community is managed and operated by Greystar.  *Id.*  Since at least 2012, Greystar has partnered with Conservice to operate "a coordinated utility billing system" for the community.  *Id.*  Under this coordinated system, Greystar "controlled property management, tenant accounts, and enforcement actions," while Conservice operated the utility billing platform and "calculated and electronically transmitted monthly utility invoices to tenants."  *Id.*

In October 2024, Plaintiff received an invoice from Conservice that "represented that the listed utility, gas, water, and sewer charges reflected actual

---

[1]  This factual background is drawn from the allegations contained in the SAC, ECF No. 67, which are taken as true at this motion-to-dismiss stage.  *See, e.g.*, *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

utility consumption" attributable to his unit.  *Id.* at PageID.2091.  But in fact, the invoiced charges "materially exceeded meter-based cost when calculated using the per-unit rates printed on the statement."  *Id.*

"From February through August 2025, Plaintiff collected twice-daily timestamped and geolocated meter readings for electricity, gas, and water."  *Id.* Using these meter readings, he "reconstructed actual utility cost" based on the "per-unit rates printed on Conservice invoices."  *Id.*  This reconstruction revealed "approximately 79 [percent] inflation relative to meter-based cost."  *Id.*  Plaintiff then conducted "equivalent meter-based reconstructions" for other tenants.  *Id.*  In "every instance, billed charges exceeded meter based cost," with an average inflation rate of more than 58 percent.  *Id.* at PageID.2092.

Plaintiff complained to "the landlord" about these "billing practices," but continued to pay rent.  *Id.* at PageID.2094.  After he complained, "adverse tenancy actions were initiated."  *Id.*  This lawsuit followed.

## B.     Procedural Background

Plaintiff filed his original complaint on July 18, 2025.  ECF No. 1. On December 22, 2025, the court dismissed all claims with partial leave to amend. *See* ECF No. 53; *Grant v. Greystar Real Est. Partners, LLC*, 2025 WL 3712270 (D. Haw. Dec. 22, 2025) ("*Grant I*").  Plaintiff filed an amended complaint on December 23, 2025, ECF No. 54, and on February 27, 2026, the court again dismissed all claims with partial leave to amend, *see* ECF No. 66; *Grant v.*

3

*Greystar Real Est. Partners, LLC*, 2026 WL 555580 (D. Haw. Feb. 27, 2026) ("*Grant II*").

Plaintiff then filed the SAC on March 4, 2026.  ECF No. 67.  On March 18, 2026, Defendants each filed a motion to dismiss.  ECF Nos. 68 & 69. Plaintiff filed a consolidated opposition on April 16, 2026, ECF No. 75, and on April 24, 2026, Defendants each filed a reply, ECF Nos. 77 & 78.[2]  The court decides the motions without a hearing pursuant to Local Rule 7.1(c).

### III.  STANDARDS OF REVIEW

A complaint must contain "a short and plain statement" of each claim "showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To determine whether that requirement is satisfied, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and decide whether these allegations state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint "may not simply recite the elements of a cause of action," but instead "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v.*

---

[2]  Plaintiff had filed a consolidated opposition on April 6, 2026, but it was stricken because it significantly exceeded the length limits imposed by Local Rule 7.4.  *See* ECF No. 73 (explaining that the opposition ran to "92 pages and more than 19,000 words").  The court also struck the more than 1,600 pages of attachments filed with the initial opposition, and reminded Plaintiff that at the "motion-to-dismiss stage, the court will not consider new facts alleged in an opposition brief or its attachments."  *Id.* (citing *Andrews v. Hawaii County*, 2023 WL 5274369, at *6 (D. Haw. Sept. 17, 2013)).

*Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Iqbal*, 556 U.S. at 678 (noting that Rule 8 does not require detailed factual allegations, but "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation").

Claims sounding in fraud are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b).  To satisfy the heightened standard, the complaint must "state with particularity the circumstances constituting" the fraud.  Fed. R. Civ. P. 9(b).

Pro se filings must be liberally construed, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), but "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong," *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and should be denied only where "the pleading could not possibly be cured by the allegation of other facts."  *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 960 (9th Cir. 2020) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)) (quotation marks omitted).  In other words, leave to amend may be denied when amendment would be futile. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014). That said, leave to amend is discretionary, and that discretion is particularly broad

5

where a plaintiff has already been granted opportunities to amend. *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

## IV.  DISCUSSION

### A.  Civil RICO Claim

To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joinders of Am. v. Bldg. & Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014); *see also* 18 U.S.C. § 1962(c).

The court's previous dismissal order concluded that the First Amended Complaint ("FAC") had plausibly alleged the existence of an enterprise but had failed to plausibly allege a pattern of racketeering activity by either Defendant. *See Grant II*, 2026 WL 555580, at *2–4.  The SAC, however, omits several allegations that were essential to the previous order's conclusion regarding the existence of an enterprise. *See Amina v. WMC Fin. Co.*, 329 F. Supp. 3d 1141, 1167 (D. Haw. July 5, 2018) ("An amended complaint generally supersedes a prior complaint, and must be complete in itself without reference to the prior superseded pleading.").  Given these omissions, the SAC fails to plausibly allege the existence of an enterprise.  In addition, the SAC still fails to allege a pattern of racketeering activity by Greystar.

6

### 1.    *Existence of an enterprise*

The court's most recent order concluded that the FAC had plausibly alleged the existence of an association-in-fact enterprise.  *See Grant II*, 2026 WL 555580, at *3.  Conservice argues that this conclusion rested on allegations omitted from the SAC.  *See* ECF No. 68-1 at PageID.2116–2119.  The court agrees.

Like the FAC, the SAC alleges that Defendants formed an association-in-fact enterprise.  *See* ECF No. 67 at PageID.2090 ("Defendants functioned as an associated-in-fact enterprise . . . .").  An association-in-fact enterprise must have (1) a common purpose, (2) structure or organization, and (3) longevity necessary to accomplish the purpose.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

The FAC alleged that Defendants "operated and participated in an ongoing scheme to inflate or fabricate tenant utility charges, suppress or alter billing records when discrepancies were challenged, and deter tenant resistance through selective refunds, intimidation, and adverse housing actions."  ECF No. 54 at PageID.1931.  These allegations were sufficient to establish the common-purpose element of an association-in-fact enterprise because they showed that Defendants' relationship went beyond "routine business activities."  *Grant II*, 2026 WL 555580, at *3 (quoting *Fraser v. Team Health Holdings, Inc.*, 2022 WL 971579, at *11 (N.D. Cal. Mar. 31, 2022)) (quotation marks omitted).

In contrast, the SAC contains only a conclusory allegation that "Defendants functioned as an associated-in-fact enterprise with a common purpose of administering centralized utility billing that materially overstated tenant utility charges." ECF No. 67 at PageID.2090. The SAC lacks factual support for this alleged common purpose—for example, that Defendants "suppress[ed] or alter[ed] billing records" and took steps to "deter tenant resistance," as was alleged in the FAC. ECF No. 54 at PageID.1931; *see also Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986) (stating that "wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss").

Instead, the SAC merely alleges that Defendants "operated a coordinated billing system," with Greystar controlling "property management, tenant accounts, and enforcement actions," and Conservice operating "the billing platform used to calculate, generate, and electronically transmit utility charges." ECF No. 67 at PageID.2090. These descriptions of Defendants' legitimate "role[s] and business interactions" do not establish that their relationship was "more substantial than a routine business relationship," and are therefore insufficient "to show a common purpose to commit fraud." *Fraser*, 2022 WL 971579, at *12 (concluding same based on similar alleged facts). As a result, the SAC fails to plausibly allege the existence of an association-in-fact enterprise.

8

### 2.    *Pattern of racketeering activity*

In addition, the SAC fails to allege a pattern of racketeering activity by Greystar.  The SAC focuses exclusively on "inflated" utility invoices sent by Conservice to Plaintiff and other tenants.[3]  *See, e.g.*, ECF No. 67 at PageID.2092 ("On a monthly basis, Conservice electronically transmitted utility invoices to Plaintiff and other tenants.").  The SAC does not, however, allege that Greystar was involved in preparing or transmitting the invoices, or committed other predicate acts in furtherance of the overbilling scheme.  And although the SAC alleges that "Defendants" controlled the "centralized billing system" and "Defendants" knew the invoices were inflated, *id.* at PageID.2093, a plaintiff alleging a fraud scheme may not "merely lump multiple defendants together" and must instead "at a minimum, 'identify the role of each defendant,'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)) (brackets omitted).

\* \* \*

In sum, the SAC fails to plausibly allege the existence of a RICO enterprise, and in addition, fails to plausibly allege a pattern of racketeering activity by Greystar.  Accordingly, Plaintiff's RICO claim is DISMISSED as to both Defendants.  And because Plaintiff "has been granted multiple opportunities

---

[3]  The court expresses no view on whether the SAC plausibly alleges a pattern of racketeering activity by Conservice.

to amend the complaint and has failed to remedy identified deficiencies" in his

RICO claim, further leave to amend is DENIED. *Varlitskiy v. County of Riverside*,

2020 WL 6049935, at *4 (C.D. Cal. Aug. 11, 2020); *see also Rich v. Shrader*, 823

F.3d 1205, 1209 (9th Cir. 2016) (stating that where a district court "has already

afforded a plaintiff an opportunity to amend the complaint, it has 'wide discretion

in granting or refusing leave to amend after the first amendment, and only upon

gross abuse will [its] rulings be disturbed'") (quoting *Heay v. Phillips*, 201 F.2d

220, 222 (9th Cir. 1952)) (brackets in original); *Williams v. Felker*, 467 F. App'x

580, 582 (9th Cir. 2012) (affirming dismissal without leave to amend where

plaintiff had "failed to cure the deficiencies identified by the court despite multiple

opportunities to do so"); *Grant II*, 2026 WL 555580, at *5 ("This will be Plaintiff's

final opportunity to amend.").

**B.      Interference Claim**

The court's most recent order granted leave to amend "as to Plaintiff's

RICO and retaliation claims" but did not grant leave to add new claims. *Grant II*,

2026 WL 555580, at *5.[4]  Despite these limits, the SAC asserts—for the first

time—an interference claim under 42 U.S.C. § 3617, a section of the Fair Housing

Act.  ECF No. 67 at PageID.2094.

---

[4]  The court's first dismissal order imposed similar limits on the scope of leave to amend.
*See Grant I*, 2025 WL 3712270, at *6 (granting leave to amend "as to Plaintiff's RICO,
spoliation, and retaliation claims").

Where "leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010); *see also Warren v. Specialized Loan Servicing, LLC*, 2024 WL 3207003, at *2 (C.D. Cal. Mar. 1, 2024) ("Courts in this Circuit routinely strike or dismiss . . . claims that exceed the scope of an order granting leave to amend.") (collecting cases).  This rule "applies even if the court did not expressly bar amendments other than the one(s) it *did* allow," and "applies with equal vigor to *pro se* plaintiffs." *Raiser v. City of Los Angeles*, 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) (italics in original).

Plaintiff's newly asserted interference claim exceeds the scope of leave to amend granted in the court's most recent order, and is therefore STRICKEN.  *See Sifuentes v. Google Inc.*, 2023 WL 4181267, at *8 (N.D. Cal. June 26, 2023) ("This Court has repeatedly given [the plaintiff] the benefit of the doubt because of his pro se status.  At some point, however, the Court must draw a line.  The Court has reached that point.") (striking new claims outside the scope of leave to amend).

In addition, the SAC fails to state a claim under § 3617.  This section of the FHA prohibits interference with the exercise of rights granted or protected by certain other sections of the statute—namely, the rights covered by 42 U.S.C.

11

§§ 3604, 3605, and 3606.[5]  These sections prohibit discrimination in the sale or rental of housing, in other residential real estate transactions, and in the provision of brokerage services, respectively.  They apply only to discrimination based on specified protected statuses.  *See* 42 U.S.C. § 3604 (prohibiting discrimination based on "race, color, religion, sex, familial status, or national origin"); *id.* §§ 3605, 3606 (same, and based on "handicap"); *see also Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997) (stating that a plaintiff's status as "a member of a protected class" is an element of an FHA discrimination claim).

Here, the SAC alleges that Plaintiff "engaged in protected activity by challenging housing-related billing practices" and that Defendants "interfered with and retaliated against [him] for exercising those rights."  ECF No. 67 at PageID.2094.  Challenging utility-billing practices, however, does not implicate any of the rights protected under §§ 3604, 3605, or 3606.  Moreover, the SAC does not allege that Plaintiff was discriminated against based on a protected status.  *See id.*  As a result, even if the interference claim were not stricken, it would be dismissed for failure to state a claim.  *See, e.g.*, *DeLeon*, 2010 WL 4285006, at *4 (striking newly alleged claims as exceeding the scope of leave to amend, and stating that "in addition, . . . the new claims must be dismissed in any case because they are insufficiently pled").

---

[5]  Section 3617 also lists § 3603, which establishes definitions, effective dates, and exemptions but does not itself protect or guarantee any rights.

## C.    Retaliation Claim

Plaintiff's final claim is a state-law claim for retaliation under Hawaii Revised Statutes ("HRS") § 521-74.  *See* ECF No. 67 at PageID.2094.  The SAC does not allege facts to establish diversity jurisdiction, and instead invokes this court's supplemental jurisdiction under 28 U.S.C. § 1367.  *See* ECF No. 67 at PageID.2090; *Mann*, 782 F.2d at 794 (stating that "a plaintiff must affirmatively allege essential elements of diversity jurisdiction").

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims where, as here, the court has "dismissed all claims over which it has original jurisdiction."  In doing so, the court must consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  Where no federal claims remain, the balance of factors will generally point toward declining to exercise jurisdiction over remaining state-law claims.  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).  Exercising its discretion with those considerations in mind, the court

13

declines to exercise supplemental jurisdiction over Plaintiff's state-law retaliation

claim and DISMISSES the claim without prejudice to refiling in state court.[6]

## V.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motions,

ECF Nos. 68 & 69, DISMISSES Plaintiff's RICO claim WITHOUT LEAVE TO

AMEND, STRIKES Plaintiff's interference claim under 42 U.S.C. § 3617, and

DISMISSES Plaintiff's retaliation claim under HRS § 521-74 WITHOUT

PREJUDICE.  The Clerk of Court shall close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 19, 2026.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

---

[6]  If Plaintiff files his HRS § 521-74 claim in state court, the statute of limitations would be tolled for the period that this federal case was pending.  *See* 28 U.S.C. § 1367(d) (stating that the "period of limitations for any claim asserted" under the district court's supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"); *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock.").